**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LEONARD DAVIS,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civ. No. DLB-24-160** |
| **WASHINGTON METROPOLITAN AREA** | * | |
| **TRANSIT AUTHORITY,** | | |
| | * | |
| **Defendant.** | | |

**MEMORANDUM OPINION**

Leonard Davis operated a bus for the Washington Metropolitan Area Transit Authority ("WMATA"). WMATA terminated Davis for cause after he arrived ten minutes late for a random drug test. Davis grieved the termination. After WMATA denied the grievance, his union, Amalgamated Transit Union, Local 689, invoked arbitration. A three-member Board of Arbitration upheld the termination. Davis then sued WMATA, claiming WMATA violated the terms of its collective bargaining agreement when it found Davis did not arrive at the drug testing site on time. WMATA moved for summary judgment. Davis, who is proceeding without counsel, opposed the motion. The Court grants WMATA's motion for summary judgment.

**I.     Background**

The following facts are taken from the May 31, 2023 Board of Arbitration Opinion and Award ("arbitration award" or "arbitration decision"). ECF 12-2. Davis operated a bus for WMATA. *Id.* at 9. He was assigned to the Montgomery Bus Division, for which the closest metro

station is North Bethesda.[1] *Id.* Davis was a member of Local 689, Amalgamated Transit Union, AFL-CIO (the "union" or "Local 689"). *Id.*

As a bus operator, Davis was required to comply with certain Department of Transportation regulations and WMATA policies applicable to "safety-sensitive employees." *Id.* at 7. One of those policies subjects bus operators to random drug testing. *Id.* (quoting WMATA Policy/Instruction 7.7.3/6, § 5.02(h)).[2] If an employee refuses to test, WMATA will treat the refusal to test as a positive test, which entails certain penalties. *See* 49 C.F.R. § 40.191(c); ECF 12-2, at 7–8. Under 49 C.F.R. § 40.191(a)(1), an employee refuses to take a DOT drug test when he "fail[s] to appear for any test (except a pre-employment test) within a reasonable time, as determined by the employer . . . after being directed to do so by the employer."

Pursuant to an agreement between Local 689 and WMATA, WMATA offers an employee assistance program to Local 689 members who report a positive drug test or refuse to test. ECF 12-2, at 12. An employee who is deemed positive because of a refusal to test may enroll in the program for 180 days or face termination. *Id.* However, if an employee has another positive test and participated in the program within the preceding three years, he is ineligible for further participation in the program and WMATA may terminate his employment. *Id.* at 8, 18.

On April 26, 2021, at 3:56 p.m., Davis's supervisor advised Davis that he and two of his colleagues had been selected for a random drug test and needed to report to the Jackson Graham Building in Washington, D.C. for testing. ECF 12-2, at 8, 10. Under WMATA policy, an employee

---

[1] At the time, North Bethesda station was called White Flint station. The Metro Board of Directors changed the name of the station in 2022.

[2] The parties discuss the WMATA policy, but they have not provided it to the Court. The Board cited the WMATA policy in the arbitration decision, and no one disputes that the Board's description of the policy is accurate. The Court's understanding of the WMATA policy is based on the Board's description of it.

traveling from Davis's duty station, North Bethesda, has 60 minutes to arrive at the testing site from the time he passes through the North Bethesda station's fare gates. *Id.* at 8. Davis swiped through the North Bethesda fare gates at 4:22 p.m. *Id.* at 10. His colleagues swiped through the North Bethesda fare gates at 4:19 p.m. and 4:20 p.m. *Id.* Davis and his colleagues exited the fare gates at Gallery Place metro station at 5:05 p.m. *Id.* They arrived at the testing site at 5:32 p.m. carrying takeout bags. *Id.* at 10–11.

Because Davis and his colleagues did not arrive within 60 minutes of passing through the North Bethesda fare gates, WMATA treated their tardiness as a refusal to test and thus a positive test result. *Id.* at 11. WMATA referred Davis's colleagues to the employee assistance program. *Id.* at 12. They chose to participate in the program and successfully completed treatment. *Id.* Davis, conversely, had participated in the program a year earlier after a positive drug test. *Id.* So he was ineligible to participate a second time and was fired. *Id.*

Davis and his colleagues filed a grievance. *Id.* Davis's colleagues challenged their suspensions and involuntary placements in the assistance program. *Id.* Davis grieved his termination. *Id.* WMATA denied the grievances. *Id.*

Davis's union invoked arbitration. *Id.* The Board of Arbitration considered evidence and testimony from both parties during two hearings. *Id.* at 1. It also reviewed post-hearing briefs. *Id.* at 2.

Under the terms of the collective bargaining agreement, WMATA may discipline an employee only if it has "sufficient cause." *Id.* at 6. The union argued that WMATA did not have sufficient cause to discipline Davis and his colleagues, because, by the union's calculation, Davis and his colleagues were not late when they arrived at the testing site. *Id.* at 16. According to the union, they had 80 minutes from the moment they passed through their duty station fare gates to

make their way to the testing site. *Id.* For this position, the union cited a provision in a 2013 memorandum of agreement with WMATA that the union insisted WMATA had ratified. *Id.* Under that provision, the allotted time to arrive for a random drug test was the travel time in the WMATA policy (60 minutes from the moment the employee passes through the fare gates of their duty station), plus 20 minutes. *Id.* at 8. The union argued that Davis had 80 minutes from 4:22 p.m., when he passed through the North Bethesda fare gates, to arrive at the testing site. *Id.* at 16. By the union's calculation, Davis arrived at 5:32 p.m. with ten minutes to spare. *Id.* Because Davis was not late and thus did not refuse to test, the union argued, WMATA did not have sufficient cause to terminate him under the collective bargaining agreement. *Id.* at 16. WMATA denied that it ever ratified the provision of the memorandum that authorized an additional 20 minutes of travel time. *Id.* at 9. So WMATA claimed it had sufficient cause to terminate Davis. *Id.* at 12.

The Board denied the grievances. *Id.* at 21. The Board considered the parties' arguments and noted that the union did not contest the reasonableness of the travel times. *Id.* at 19. The union also did not dispute that an employee who arrives late will be deemed to have a positive test result and that WMATA has sufficient cause to terminate an employee who has two positive test results in three years. *Id.* Instead, the union argued that WMATA did not have sufficient cause to terminate Davis because he arrived on time to the testing site. *Id.* at 16. The Board found Davis did not arrive on time. *Id.* at 18–19. It found that, even under the union's understanding of the purported 2013 agreement with WMATA, employees were allotted "travel time plus 20 minutes *following an order to report for testing.*" *Id.* at 19 (quoting 2013 memorandum language). So even if that were the agreement between the union and WMATA, Davis did not have an additional 20 minutes of travel time from the moment he passed the fare gates in North Bethesda. *Id.* at 20. He had 20 minutes of travel time from when he received the "order to report for testing." *Id.* at 19. Davis's

4

supervisor ordered him to report for testing at 3:56 p.m. *Id.* Davis arrived at the testing site at 5:32 p.m. *Id.* at 11. So even if WMATA had ratified the provision allowing an additional 20 minutes of travel time—which the Board did not decide—Davis arrived more than 80 minutes after his supervisor instructed him to report for testing. *Id.* at 19–20. The Board found Davis's tardiness could not be excused or mitigated. *Id.* at 19. Thus, the Board found that Davis's termination complied with the collective bargaining agreement. *Id.* at 21.

In October 2023, Davis sued WMATA in the Circuit Court for Montgomery County, Maryland. ECF 1 (Notice of Removal), ¶ 1. Davis claims that the Board's ruling violated the collective bargaining agreement that allowed him an extra 20 minutes of travel time to the testing site. ECF 4 (Amended Compl.), at 1. He requests an order compelling WMATA to comply with the bargaining agreement and "full reinstatement with back pay." *Id.* Davis served WMATA on December 29, 2023. ECF 1, ¶ 2. WMATA filed a timely notice of removal pursuant to 28 U.S.C. § 1446. *Id.* ¶ 4. This Court has original jurisdiction over this action pursuant to the WMATA Compact, which grants original jurisdiction over "all actions" in which WMATA is a party to the United States district courts and the courts of Maryland, the District of Columbia, and Virginia. *See* Pub. L. No. 89-774, 80 Stat. 1324, 1350 (1966).

Now pending is WMATA's motion for summary judgment. ECF 12. WMATA filed a memorandum in support and a statement of undisputed facts, and Davis filed an opposition. ECF 12-1, 14. WMATA did not file a reply, and the time for doing so has passed. *See* Loc. R. 105.2(a). A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2023).[3]

---

[3] The Court construes pro se filings liberally. *See Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). Still, the "the 'special judicial solicitude' with which a district court should view . . . pro se [filings] does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (alteration in original) (quoting *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387,

## II.    Discussion

Davis seeks review of the Board's arbitration decision. He alleges the Board incorrectly interpreted the collective bargaining agreement, and he asks this Court to review and set aside the Board's decision. The Court construes his complaint as a petition to vacate the arbitration decision. WMATA argues Davis has not identified grounds to set aside the arbitration decision and that the Court should enter judgment in its favor.

The Court must determine, based on the current record, whether there are "genuine disputes as to material facts" and whether WMATA "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4]

The scope of a federal court's review of an arbitration award is "among the narrowest known to the law." *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (quoting *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam)). "[I]n reviewing [an arbitration] award, 'a district or appellate court is limited to determin[ing] whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492

---

391 (4th Cir. 1990)). To deny summary judgment, the Court must still find a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a).

[4] Davis complains that WMATA failed to provide him with a transcript of the arbitration hearing before the Board. ECF 10, at 2; ECF 14, at 2. Davis does not identify why the transcript is relevant to his claim, and he does not identify what information the transcript may reveal that would justify setting aside the award. Davis also has not filed an affidavit under Federal Rule of Civil Procedure 56(d) asserting he needs discovery to oppose WMATA's summary judgment motion. *See* Fed. R. Civ. P. 56(d); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Even if the Court construes Davis's opposition and correspondence with the Court, ECF 10, as a Rule 56(d) affidavit, the Court may rule on WMATA's summary judgment motion if "the information sought" in the transcripts "would not by itself create a genuine issue of material fact" sufficient to preclude summary judgment. *See Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). The Court finds Davis has not shown that the transcripts would create a genuine issue of material fact that would preclude summary judgment. The Court can rule on the legality of the arbitration award by reviewing the arbitration decision.

F.3d 520, 527 (4th Cir. 2007) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)).

A court may vacate an arbitration award under federal common law[5] when the "award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). The court also may vacate an award if it "was 'arbitrary and capricious' or not 'sufficiently definite to allow enforcement.'" *Fraternal Ord. of Police Metro Transit Police Lab. Comm., Inc. v. Wash. Metro. Area Transit Auth.*, 780 F.3d 238, 241 n.3 (4th Cir. 2015) (quoting *Office & Prof'l Emps. Int'l Union, Local 2 v. Wash. Metro. Area Transit Auth.*, 724 F.2d 133, 140 (D.C. Cir. 1983)).

Davis has not pled in his complaint or argued in his opposition that the award should be vacated on grounds recognized by federal common law. Even construing Davis's response liberally, Davis cannot satisfy any common law ground of vacatur. First, the Board's decision drew its essence from the collective bargaining agreement. The Board referenced the agreement throughout its decision, and it cited the agreement's sufficient cause standard for termination. ECF 12-2, at 6. In its conclusion, the Board found that the union did not prove that "[WMATA's]

---

[5] Federal common law applies here. The Federal Arbitration Act does not. The FAA does not apply to "contracts of employment of . . . railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also Jones v. Wash. Metro. Area Transit Auth.*, No. Civ.A. 95-2300-LFO, 1997 WL 198114, at *1 n.1 (D.D.C. Apr. 10, 1997) (noting that the FAA does not apply to WMATA employees). Further, the National Capital Area Interest Arbitration Standards Act of 1995, tit. IV, Pub. L. No. 104-50, 109 Stat. 463 (codified as amended at 40 U.S.C. §§ 18301–04), does not apply here either. That statute does not apply to "the interpretation and application of rights arising from an existing collective bargaining agreement." 40 U.S.C. § 18302(1)(B). Because Davis's suit relates to the application of rights under the collective bargaining agreement, the statute does not apply. *See Wash. Metro. Area Transit Auth. v. Local 2, Off. & Pro. Emps. Int'l Union, AFL-CIO*, 965 F. Supp. 2d 13, 26 (D.D.C. 2013) (explaining that the Act applies to the negotiations of a renewed collective bargaining agreement between the union and WMATA, not to an employee or union challenge to the interpretation of an existing collective bargaining agreement).

conduct was in violation of its obligations under the Agreement." *Id.* at 21. The arbitration decision was drawn from the collective bargaining agreement between the union and WMATA.

Further, to be entitled to vacatur on this ground, Davis must prove that "the result is not 'rationally inferable from the contract.'" *See Patten*, 441 F.3d at 235 (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir. 1998)). He cannot do so. The union conceded that WMATA has sufficient cause to terminate an employee who has two positive drug test results in three years. The union also conceded that, under the applicable regulations, WMATA will deem a late arrival at a testing center as a positive test. The Board considered the parties' arguments and determined that, even under the terms of the 2013 memorandum of understanding, Davis arrived late to the testing center. The Board found that Davis's late arrival counted as his second positive test in three years and thus found that WMATA terminated him in accordance with the applicable policy and regulations. The Board also found Davis's tardiness was not "otherwise excused or mitigated." ECF 12-2, at 19. Because the Board found that WMATA was justified in terminating Davis under the applicable DOT regulations and WMATA policy, it necessarily found that Davis's termination was supported by sufficient cause under the collective bargaining agreement. The Board's decision was rationally inferable from the applicable policy and regulations.

Davis has not satisfied any other ground for vacatur of the arbitration award. To establish "a manifest disregard of the law," a plaintiff must show that "the 'arbitrator understands and correctly states the law, but proceeds to disregard the same.'" *Patten*, 441 F.3d at 235 (cleaned up) (quoting *Upshur Coals Corp. v. United Mine Workers, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991)); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("It is only when the arbitrator strays from interpretation and application of the agreement and effectively

'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." (alteration in original) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960))). Here, the Board carefully reviewed the relevant WMATA policy and DOT drug testing regulations and discussed the rules governing travel time to a drug testing site at length. *See* ECF 12-2, at 19–21. Davis insists the Board got it wrong. On his account, the union and WMATA agreed, in the 2013 memorandum of understanding, to allow employees an additional 20 minutes of travel time to the drug testing site. The Board addressed the 2013 memorandum. *See id.* at 18–20. Still, Davis argues that the Board "didn't mention or address" a 2016 memorandum that ratified and updated the 2013 memorandum. ECF 14, at 1. He also argues that the Board "made clear [it] used a calculation from a hand out or bulletin from 2021 not approved through the bargaining process." *Id*. Davis is correct that the Board did not mention a 2016 memorandum ratifying the 2013 agreement. Even so, it does not matter that the Board did not mention the 2016 memorandum, because the Board assumed, for purposes of its ruling, that the 2013 agreement had been ratified. The Board found that, even under the union's understanding of its agreement with WMATA, Davis was late to the testing site because he arrived 80 minutes after he was ordered to report for testing. Davis cites no evidence that WMATA ever agreed to a policy that gave employees 80 minutes to get to the testing site from the moment they pass through their metro duty station fare gates. Far from "dispens[ing] [its] own brand of industrial justice," *see Steelworkers*, 363 U.S. at 597, the Board considered evidence from both sides and reasonably concluded that Davis arrived late to his random drug test. The Board did not manifestly disregard the law.

Finally, Davis has made no showing that the Board's decision was arbitrary, capricious, or outside the scope of its jurisdiction. It was not, for the reasons stated in this memorandum. Davis's

disagreement with the Board's decision does not give him license to rehash the arbitration proceedings in this Court. Davis has not shown grounds for vacating the arbitration award.

**III.    Conclusion**

Davis has not established that the May 31, 2023 Board of Arbitration Opinion and Award denying the union's grievance on Davis's behalf should be vacated. WMATA's motion for summary judgment is granted. A separate order follows.

Date: January 17, 2025

Deborah L. Boardman
United States District Judge